FILED
RICHARD W. HAGEL
CLERK OF COURT

2023 DEC 18 PM 1: 54

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

## IN THE UNITED STATES DISRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION, COLUMBUS, OHIO

CHARLES R. EVANS,

    Plaintiff,

v.

SUMMIT HILL FOODS, INC.,

    Defendant.

Case No.

2:23 CV 4149

JUDGE MORRISON

MAGISTRATE JUDGE JOLSON

## COMPLAINT

    Plaintiff, Charles R. Evans ("Evans"), an individual, brings this action against Defendant, Summit Hill Foods, Inc. *fka* Southeastern Mills, Inc. ("Defendant"), and alleges as follows:

## PARTIES

1. Evans is an individual with a principal place of business at 1892 Oakland Park Avenue, Columbus, Ohio 43224.

2. Upon information and belief, Defendant is a Georgia corporation with its principal place of business at 333 Old Lindak Road, SE, Rome, Georgia 30161.

3. Upon information and belief, CT Corporation System is the statutory agent for Defendant with its principal place of business at 289 S. Culver

Street, Lawrenceville, Georgia 30046.

4. Upon information and belief, Defendant can be served with process at the above addresses.

## JURISDICTION

5. This is an action for permanent injunctive relief, statutory damages, triple damages for willful infringement, costs, profits, legal fees, and all monetary expenditures in connection with Defendant's infringement of Evans' federally registered marks in violation of 15 U.S.C. 1114(1); for Defendant's unfair competition in violation of 15 U.S.C. 1125(a); for Defendant's infringement and unfair competition of Evans' Smokey Chipotle trademark and Evans' Smokin' Chipotle trademark under Ohio Revised Code Sections 1329.54 -1329.67; and for Defendant's infringement and unfair competition in violation of the common law of Ohio.

6. This Court has jurisdiction over the subject matter of the instant matter pursuant to the provisions of 15 U.S.C. 1121 and 28 U.S.C. 1331, 1338, and 1367. Defendant is incorporated in the state of Georgia, USA and is subject to the personal jurisdiction of this Court.

## VENUE

7. Venue is proper in this District pursuant to the provisions of 28 U.S.C. 1391(b).

8. Upon information and belief, Defendant uses Evans' trademark in commerce for International Class 30 product(s) creating a likelihood of confusion and infringing Evans' trademarks.

9. Upon information and belief, Defendant markets, distributes, and sells International Class 30 product(s) in this judicial district; throughout Ohio; and throughout the entirety of the USA.

10. Upon information and belief, Defendant is subject to the personal jurisdiction of this Court.

## FACTS COMMON TO ALL COUNTS

11. Evans is the owner of the following United States Patent and Trademark Office ("USPTO") Federal Registrations {the "Smokey Chipotle Marks"}:

12. SMOKEY CHIPOTLE, Reg. No. 1,874,062, Registered January 17, 1995 for "sauces (condiments *including, but not limited to: pepper sauces, hot sauces, salsas, barbecue sauces, table sauces, marinades, soup bases, salad dressings, chile pepper mash, chile pepper seasonings*); *and* spices (*including, but not limited to: seasoning blends and mixes, taco seasoning, herb and spice blends, seasoning salt)*" in International Class 30;

13. SMOKIN' CHIPOTLE, Reg. No. 3,512,566, Registered October 7, 2008 for "sauces (condiments *including, but not limited to: pepper sauces, hot sauces, salsas, barbecue sauces, table sauces, marinades, soup bases,*

*salad dressings, chile pepper mash, chile pepper seasonings); and* spices *(including, but not limited to: seasoning blends and mixes, taco seasoning, herb and spice blends, seasoning salt)*" in International Class 30.

14. **SMOKEY CHIPOTLE, Reg. No. 1,874,062, Registered January 17, 1995, was the very first trademark registered on the Principal Register incorporating the Spanish word, "chipotle".**

15. **SMOKEY CHIPOTLE, Reg. No. 1,874,062 and SMOKIN' CHIPOTLE, Reg. No. 3,512,566 have become incontestable under 15 U.S.C. 1065 and thus constitute conclusive evidence of the validity of Evans' registered marks, of Evans' ownership of these marks, and of Evans' exclusive right to use such marks in commerce.**

16. **Evans made, and makes, *no claim* to the exclusive right to use the word "chipotle", apart from the Trademark Principal Register phrase.**

17. **The disclaimed portion of the mark, "Chipotle", is all that is necessary to describe similar International Class 30 products. Numerous International Class 30 products manufactured by multitudes of United States food companies and proprietors are identified by the sole descriptive word, "Chipotle". Attached is EXHIBIT A, an array of photographs of International Class 30 salsas and hot sauces identified by the singular, and disclaimed word, "Chipotle".**

18. The word, *chipotle*, was not commonly known in the English language nor in the United States, *if at all,* in 1986 when Evans manufactured, and sold in commerce (1987), the first chipotle pepper sauce, chipotle salsa, and chipotle barbecue sauce made in the United States.

19. Nearly a decade passed until the chipotle spice became somewhat commonplace in the United States as a prepared spice, ingredient, and utilized in commercial food products.

20. Evans co-authored the first and definitive book on the history and lore of the chile chipotle, *The Pepper Pantry: Chipotle (*1997) Celestial Arts Publishing.

21. Evans filed his suggestive trademark, "Smokey Chipotle", an inherently distinctive phrase which combined an *English* noun "Smokey", intentionally misspelled (with the letter *e* added) to differentiate it from the adjective smoky, and whereby adding the letter *e* provides a mnemonic hint; uniquely rhyming with the *Sp*anish word, "Chipotle". The definition of the word "Chipotle" {*chil* meaning c*hile*; *poctli* meaning *smoked* }, translates in English to "Smoked Chile", which derived etymologically from the Nahuatl (Azteca/Mexica) language.

22. The phrase *Smokey Chipotle* became a distinctively unique and redundant word phrase, translating in English to *Smok(e)y Smoked Chile.*

23. **Evans' distinctive Smokey Chipotle word mark phrase, utilized exclusively on his commercial food product labels from 1986/1987 inception/first commercial use, respectively, through Evans' 1995 Trademark Principal Registration, and utilized uninterrupted to the present day, suggested to United States consumers completely unfamiliar with *the disclaimed* word "chipotle", that his original Smokey Chipotle pepper sauce(s), and subsequently, multiple flavor varieties of salsas, barbecue sauces, and seasonings made with this unique spice ingredient, *described the prepared chipotle spice ingredient itself,* <u>suggesting</u> that Evans' *finished* products offered to potential consumers, were "smoky" in flavor.**

24. **Attached is EXHIBIT B, an array of early nationally-distributed magazine photo advertisements and sales brochure of Evans' Smokey Chipotle *ca.* 1989 – 1996.**

25. **In 1987 Evans utilized the trademark phrase in a rhyming sequence to make it easy for consumers to remember a new spice introduced by Evans to the United States' International Class 30 consumer market, *i.e.,* the chipotle, a red ripe jalapeno pepper (Note: When the green jalapeno pepper begins to change color in the field, ripening to red, the jalapeno could not be used as a condiment topping for "nachos"; the overwhelming primary**

United States market for this Mexican export chile, where wholesale marketers demanded and required this pickled condiment to be green in color. The jalapeno variety of chile peppers contained enough water in the interior of this thick-walled chile that it would rot from the inside out and not preserve properly in the sun/air, as do thin-walled chiles.

26. The solution to salvaging a crop left rotting in the fields and which could not be sold in huge commercial quantities was by low-heat smoking, a centuries-old reintroduction method of preservation, nearly exclusive to the indigenous fields of ripening and red jalapenos in central/southern Mexico, changing the fresh red-ripe chile into a smoke-imbued spicy prepared spice/ condiment that dried out the interior walls and exterior skin of the fruit.

27. Where **all** suggestive marks *contain an element of descriptiveness in their suggestiveness*, t*he disclaimed word, "chipotle", by its' own definition, "smoked chile", is descriptive, however; use of the word "chipotle" presently does **not require**, or need, an additional descriptive qualifier, i.e., Smokey Chipotle.*

28. More than 36 years ago when the foreign word, "*chipotle*", was nearly unknown in the English language and an uncommon word in the United States, Evans' S*mokey Chipotle* word mark suggested the qualities of his products, and as a suggestive trademark, is thus protectable without a

showing of secondary meaning.

29. Defendant's use of multiple similar marks, specifically Smoked Chipotle and Smoky Chipotle, for two of their International Class 30 products are similar in appearance, sound, connotation, and commercial impression.

30. Defendant's implied meaning of their marks demonstrates the similarity of marks and a likelihood of confusion with Evans' Smokey Chipotle Marks.

31. Defendant's similarity of goods is identical.

32. Defendant's distribution channels are similar.

33. Attached is **EXHIBIT C**, a photograph taken by Evans in August 2023 in an Ohio retail grocery store showing the location of Defendant's hot pepper sauce(s) in close proximity to Evans' Smokey Chipotle Mark hot pepper sauces.

34. Evans' redundant rhyming trademark phrase is not necessary to describe "chipotle", but is a uniquely distinct word mark phrase created by Evans.

35. Evans combined the English and Spanish words making the word mark phrase rhyme, and therefore, suggesting the chile chipotle was "smok(e)y".

36. Concurrent to Evans' 2007 USPTO application for his Smokin' Chipotle trademark; another competitor, who is not a party to the instant action, filed a Petition for a Cancellation Proceeding opposing Evans' Smokey

Chipotle trademark at the United States Patent and Trademark Office {"USPTO"} Trial and Appeals Court.

37. Upon Evans' filed Merit Brief, *and* the subsequent 2008 USPTO approval for registration of Evans' Smokin' Chipotle Trademark Principal Register pursuant to the then-pending USPTO Cancellation Proceeding; the Smokey Chipotle Cancellation Proceeding was dismissed.

38. True and correct copies of the Smokey Chipotle Marks Registrations, collectively, are attached as EXHIBIT D.

39. Exclusively since 1986, Evans has continuously used the Smokey Chipotle Trademark under Ohio Common Law, Ohio Revised Code {"ORC"} Section 1329.67 prior to Evans' 1995 Federal Smokey Chipotle Principal Registration, identifying manufactured goods that are distinctive, emanating only from Evans, for his hot pepper sauces, salsas, barbecue sauces, and seasoning products. The rights supported by such use of the Smokey Chipotle Marks and the goodwill associated therein inure to the benefit of Evans.

40. Since 1986, Evans has spent thousands of dollars to advertise, market, and promote his products under the Smokey Chipotle Marks at tradeshows and markets throughout the United States, as well as; in print, online, securing domain names, and on his website. Evans has continuously owned

the domain registration names: smokeychipotle.com, smokychipotle.com, smokedchipotle.com, smokinchipotle.com, originalsmokeychipotle.com, and originalsmokychipotle.com. Evans has spent thousands of hours in research, label design, authoring articles and books, travel, demos, tradeshows, farmer's markets, and educating consumers about Evans' products.

41. As a result of such promotion of Evans' products, the Smokey Chipotle Marks identify goods manufactured by Evans, as evidenced by the Registrations.

42. Attached as **EXHIBIT E,** are photographs of Evans' line of Smokey Chipotle Mark products.

43. Goods and products identified by the of Smokey Chipotle Marks are sold in grocery stores, farmer's markets, and specialty retail stores located in the United States, including Ohio, and through computer online mail-order shopping services.

44. Evans markets and sells Goods and Products identified by the Smokey Chipotle Marks throughout the United States.

45. Evans' Smokey Chipotle Marks are recognized throughout the United States and by national food manufacturers, IP attorneys, and marketers.

46. Evans uses the Smokey Chipotle Marks exclusively, and Evans _actively_

polices his Smokey Chipotle Marks. Evans takes prompt action, including issuing immediate Cease & Desist demands sent signature required, as well as, Evans follows up with reminder letters against unauthorized uses of the Smokey Chipotle Marks; and also, where a likelihood of confusion exists (proof of actual confusion is *not* required) pursuant to spelling variations, similar spellings and conjugations of the word "smoke" *combined together in a phrase* with the word "chipotle" (including s*mokey, smoky, smoked,* and *smokin'*); marketing construction; phraseology; phrase similarities; phrase intent; and explicit and implicit definition.

47. Defendant owns the brand names Louisiana Brand and Better Than Bouillon Culinary Collection, among others.

48. Defendant has no affiliation with Evans.

49. Started in 1928 by Bruce Foods, Inc., and purchased in April 2015 by Defendant; "Louisiana" Brand hot pepper sauces are manufactured in New Iberia, Louisiana, including their *"LOUISIANA" The Perfect Chipotle Hot Sauce* ("Louisiana Chipotle #1"). This product was sold over several decades throughout the United States. This Louisiana Chipotle #1 hot sauce obviously does/did not require further distinctiveness, using o*nly* the disclaimed word "chipotle" on its main label panel. On the same bottle, a secondary label positioned separately on the neck of the Louisiana

Chipotle #1 bottle, by itself, and above the main panel label, states "*Smoky Flavor*", a description which respects, and *does not infringe* Evans' Trademark phrase.

50. Attached as **EXHIBIT F** is a photograph of Summit Hill's "*LOUISIANA" The Perfect Chipotle Hot Sauce* ("Louisiana Chipotle #1"). which product Evans purchased in May 2023 in a Cincinnati, Ohio grocery store.

51. Presently, Defendant manufactures, and sells throughout the United States, the *same* chipotle hot sauce, <u>*renamed*</u>: *The Perfect Louisiana Brand Hot Sauce Smoked Chipotle* ("Louisiana Chipotle #2").

52. Attached as **EXHIBIT G** is a photograph of Defendant Summit Hill's *The Perfect Louisiana Brand Hot Sauce Smoked Chipotle* (Louisiana Chipotle #2), which product Evans purchased in May 2023 in a Cincinnati, Ohio grocery store.

53. Defendant also presently manufactures, and sells throughout the United States, "*Better Than Bouillon Culinary Collection Smoky Chipotle*".

54. Attached as **EXHIBIT H** is a photograph of Defendant Summit Hill's *Better Than Bouillon Smoky Chipotle*, which product Evans purchased in a Columbus, Ohio grocery store.

55. On May 14, 2023 Evans mailed a Cease & Desist letter to Defendant, sent

USPS Certified Mail Signature required. The Return Receipt was signed by Defendant on May 19, 2023. On Defendant's *The Perfect Louisiana Brand Hot Sauce Smoked Chipotle* (Louisiana Chipotle #2) product's main label panel, albeit using a larger 5 fl oz glass bottle, Defendant presently continues use of a similar trademark phrase, *Smoked Chipotle,* creating consumer confusion with Evans' trademark phrase.

36. Additionally, Defendant presently uses an identical trademark phrase "*Better Than Bouillon Culinary Collection Smoky Chipotle*", *i.e.*, "Smoky Chipotle", infringing Evans' trademark phrase for Intl. Class 30 products.

57. Attached as **EXHIBIT I** is Evans' May 14, 2023 Cease & Desist Demand letter. Over the past 28 years since Registration; with a similar letter Evans notifies, and actively polices, infringement of his Smokey Chipotle Marks.

58. Attached as **EXHIBIT J** is the May 19, 2023 signed USPS Return Receipt.

59. In response to Evans' July 12, 2023 follow-up letter requesting Defendant respectfully respond to Evans' Cease & Desist demand to terminate use of the Smokey Chipotle Marks, Defendant's counsel, Eversheds Sutherland

(US) LLP, sent a July 5, 2023 letter of Defendant's *explicit intent to continue use of Evans' mark(s).*

60. Attached as **EXHIBIT K** is the July 5, 2023 letter from Eversheds Sutherland (US) LLP.

61. Defendant's multi-decade use of the disclaimed word "Chipotle" *solely* on the main label panel of their *"LOUISIANA" The Perfect Chipotle Hot Sauce* ("Louisiana Chipotle #1"), without the necessity of a suggestive/descriptive qualifier, *evinces Fair Use does not obtain in The Perfect Louisiana Brand Hot Sauce Smoked Chipotle* (Louisiana Chipotle #2), and in *"Better Than Bouillon Culinary Collection Smoky Chipotle"*. The disclaimed portion of the Evans' mark, "Chipotle", is all that is necessary to describe Defendant's similar product(s).

62. Defendant could have chosen to avoid consumer confusion and avoid infringing Evans' trademark phrase by replacing "Smoked" and "Smoky" with a plethora of synonyms, including, but not limited to: roasting/roasted, spicy, fiery, smoldering/smoldered, charred, scorching/scorched, murky, fuming, burning, flaring, searing/seared, vaporous, sizzling, flaming, sooty, and blazing, etc.

63. Defendant has willfully and knowingly used Evans' Smokey Chipotle Marks for the purposes of: 1) trading on the goodwill and reputation of

Evans' trademark phrase; 2) capitalizing on the thousands of dollars spent over the course of the trademark principal register in promotion of Evans' Goods; and 3) misleading the purchasing public that Defendant's use of Evans' Smokey Chipotle Marks are legitimately connected, affiliated with, or sponsored or approved by, Evans.

64. The consumer public is likely to be confused or deceived by Defendant's misuse of the Smokey Chipotle Marks.

65. Defendant's continued infringement, which has persisted despite Evans' protestations, demonstrates a willful and bad faith intent to create confusion, deception, and mistake in the minds of consumers, and implies an identity, connection, or relationship between Defendant and Evans, with a result of which Defendant has been and will be justly enriched.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT {15 U.S.C. 1114}

Evans incorporates by reference Paragraphs 1 through 65 of the Complaint as though fully set forth herein.

Defendant's unauthorized use of the Smokey Chipotle Marks constitutes a false designation of origin and false description, and falsely represents to the public that the goods offered by Defendant are authorized, endorsed, sponsored, or otherwise approved by Evans.

Defendant's aforesaid acts constitute infringement of Evans' federally registered Smokey Chipotle Marks in violation of Section 32(1) of the Lanham Act, as amended, 15 U.S.C. 1114.

By reason of the acts of Defendant herein alleged, Evans has suffered and, unless Defendant is restrained from continuing their unlawful acts, will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

## COUNT II
## FEDERAL UNFAIR COMPETITION {15 U.S.C. 1125(a)}

Evans incorporates by reference Paragraphs 1 through 65 of the Complaint as though fully set forth herein.

Defendant's unauthorized use of the Smokey Chipotle Marks constitute a false designation of origin and false description, and falsely represents to the public that the product(s) offered by Defendant are authorized, endorsed, sponsored, or otherwise approved by Evans.

By engaging in the aforesaid conduct, Defendant falsely represents to the public that their product(s) are legitimately affiliated or connected with Evans, falsely suggests and describes that Defendant's product(s) are sponsored or approved by Evans, and falsely designates that their product(s) originate from Evans.

Defendant's acts constitute violations of Section 43(a) of the Lanham

Act, as amended, 15 U.S.C. 1125(a).

By reason of the acts of Defendant herein alleged, Evans has suffered and, unless Defendant is restrained from continuing their unlawful acts, will continue to suffer serious and irreparable harm for which there is no adequate remedy at law.

## COUNT III
## FEDERAL TRADEMARK DILUTION {15 U.S.C. 1125(c)}

Evans incorporates by reference Paragraphs 1 through 65 of the Complaint as though fully set forth herein.

Evans' Smokey Chipotle Marks are original, distinctive marks which have been promoted, written about, advertised, and continuously used by Evans for more than thirty years.

Defendant's acts complained of herein constitute trademark dilution because Defendant's use of the Smokey Chipotle Marks in connection with the advertising, sale, and promotion of Defendant's product(s) has diluted the originality, suggestiveness, and distinctive quality of the Smokey Chipotle marks.

Defendant's acts constitute trademark dilution under Section 43(c) of the Lanham Act, as amended, 15 U.S.C. 1125(c).

By reason of the acts of Defendant herein alleged, Evans has suffered and, unless Defendant is restrained from continuing their unlawful acts, will

continue to suffer serious and irreparable harm for which there is no

adequate remedy at law.

## COUNT IV
## OHIO TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION IN VIOLATION OF THE COMMON LAW OF OHIO, OHIO REVISED CODE SECTION 1329.67, Pursuant to Remedies Available Under OHIO REVISED CODE SECTIONS 1329.54 – 1329.67

Evans incorporates by reference Paragraphs 1 through 65 of the

Complaint as though fully set forth herein.

Defendant's knowing and willful acts complained of herein constitute

trademark infringement in violation of Ohio Revised Code Section 1329.67.

Defendant's knowing and willful acts complained of herein constitute

trademark infringement with appropriate remedies available under Ohio

Revised Code Sections 1329.54 – 1329.67, as applicable.

By reason of the acts of Defendant herein alleged, Evans has

suffered and, unless Defendant is restrained from continuing their unlawful

acts, will continue to suffer serious and irreparable harm for which there is

no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Evans respectfully requests that the Court enter

judgment against Defendant as follows:

a) Permanently enjoining and restraining Defendant, their agents, employees and successors, and any and all other persons in active concert or participation with Defendant, or any of its' successors, from the following acts:

1) Using, in the advertisement, promotion, and labeling of International Class 30 food products, the Smokey Chipotle Marks, and/or any other colorable imitation of the Smokey Chipotle Marks;

2) Expressly or impliedly representing to consumers and potential customers, and/or the public that any of their International Class 30 products are affiliated in any way to Evans and Evans' Smokey Chipotle Marks;

3) Representing in any way by words or conduct that Defendant's International Class 30 products are authorized, endorsed by, sponsored, or otherwise connected with Evans and Evans' Smokey Chipotle Marks;

4) Labeling, promoting, and advertising manufactured International Class 30 products, calculated to, or likely to cause confusion or mistake in the minds of the public, leading consumers into the belief that Defendant's infringing products are authorized, endorsed,

licensed, promoted, or sponsored by Evans, or are otherwise affiliated to Evans and Evans' Smokey Chipotle Marks;

b) Adjudging Defendant to have infringed the Smokey Chipotle Marks;

c) Requiring Defendant to account for and pay over to Evans all damages suffered by Evans and all gross profits wrongfully derived by Defendant as a result of their infringement, dilution, ad unfair competition;

d) Requiring Defendant to pay over to Evans three times the actual damages sustained by Evans, together with reasonable Plaintiff fees and costs incurred by Evans in the prosecution of this action; together with reasonable attorney fees and costs incurred by Evans in the prosecution of this action;

e) Ordering Defendant to immediately terminate: all media and print advertising; online material, social media content, and website content;

f) Ordering Defendant to deliver up for destruction all labels, signs, prints, brochures, advertising and promotional materials, and any other written or recorded material or advertisements in their possession or control containing the Smokey Chipotle Marks or

any other similar and/or any other colorable imitation of the Smokey Chipotle Marks;

g) Requiring Defendant, in accordance with 15 U.S.C. 1116, to file with this Court and serve on Evans within thirty (30) days from the date of entry of any injunction a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the terms of the injunction; and

h) Awarding Evans such other and further relief as the Court finds just.

Dated: December /8 , 2023      Respectfully submitted,

Charles R. Evans, Plaintiff *Pro se*

1892 Oakland Park Avenue
Columbus, Ohio 43224
(614) 203-1608
e-mail:  evanschuck57@gmail.com