UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHARLES R. EVANS,**

    **Plaintiff,**

    v.

**SUMMIT HILL FOODS, INC.,**

    **Defendant.**

:

Case No. 2:23-cv-4149
**Chief Judge Sarah D. Morrison**
**Magistrate Judge Kimberly A. Jolson**

## OPINION AND ORDER

Charles R. Evans sells salsas and sauces under the brand name Chuck Evans' Montezuma. In 1995 and 2008, respectively, Mr. Evans registered trademarks for the phrases SMOKEY CHIPOTLE and SMOKIN' CHIPOTLE. He filed this suit challenging Summit Hill Foods, Inc.'s use of the phrase "Smoked Chipotle" on its Louisiana-brand hot sauce and "Smoky Chipotle" on its Better than Bouillon-brand flavor base. Summit Hill filed a motion to dismiss the Complaint for failure to state a claim.[1] (Mot., ECF Nos. 7, 8.) For the reasons below, the Motion to Dismiss is **GRANTED**.

**I.     BACKGROUND**

For purposes of the Motion to Dismiss, all well-pleaded factual allegations are taken as true. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

---

[1] Summit Hill also argued that Mr. Evans failed to join an indispensable party, but later withdrew that argument. (*See* ECF No. 29.)

Charles R. Evans is an Ohio resident proceeding without assistance of counsel. (Compl., ECF No. 1, ¶ 1.) In the late-1980s, Mr. Evans made and sold the country's "first chipotle pepper sauce, chipotle salsa, and chipotle barbecue sauce[.]" (*Id.*, ¶ 18.) Though not a common ingredient at the time, Mr. Evans developed special expertise in chipotle. (*Id.*, ¶¶ 18–20.) Chipotle is a red ripe jalapeño pepper that has been smoked to avoid spoiling. (*Id.*, ¶ 26.) The word derives from the Nahuatl words *chil*, meaning chile, and *poctli*, meaning smoked. (*Id.*, ¶ 21.) So, chipotle literally translates to "smoked chile." (*Id.*)

When Mr. Evans first launched his chipotle sauces and salsas, he labeled them "Smokey Chipotle." (*Id.*, ¶ 28.) In his view, the label both suggested that the product had a smoky flavor, and gave consumers a "a mnemonic hint" as to the pronunciation of chipotle by creating a rhyme. (*Id.*, ¶¶ 21, 23.)

In January 1995, Mr. Evans registered the SMOKEY CHIPOTLE trademark on the Principal Register maintained by the U.S. Patent and Trademark Office. (Compl. Ex. D, ECF No. 1-5.) Thirteen years later, he registered the SMOKIN' CHIPOTLE trademark, as well. (*Id.*) Mr. Evans has spent considerable resources manufacturing, promoting, and marketing his Smokey Chipotle sauces and salsas. (*See* Compl., ¶ 40.)

Summit Hill manufactures and markets Louisiana Hot Sauce and Better Than Bouillon products. (*Id.*, ¶ 47.) In early-2023, Mr. Evans discovered that Summit Hill added the phrase "Smoked Chipotle" to the label of their Louisiana chipotle hot sauce. (*Id.*, ¶¶ 49–51.) He also discovered that Summit Hill was selling

2

a Better Than Bouillon product labeled as "Smoky Chipotle." (*Id.*, ¶ 53.) Mr. Evans now asserts that these products infringe on his trademark rights.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly,* 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a motion to dismiss, the Court "construe[s] the complaint in the light most favorable to the plaintiff[.]" *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

3

These standards apply equally when the plaintiff is *pro se*. Although a *pro se* litigant is entitled to a liberal construction of his pleadings and filings, he still must do more than assert bare legal conclusions, and the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

### III. ANALYSIS

The Complaint asserts four claims:

Count I: Federal Trademark Infringement (15 U.S.C. § 1114)

Count II: Federal Unfair Competition (15 U.S.C. § 1125(a))

Count III: Federal Trademark Dilution (15 U.S.C. § 1125(c))

Count IV: Ohio Trademark Infringement and Unfair Competition (Ohio Rev. Code §§ 1329.54–1329.67)

(Compl.) Summit Hill argues that all four claims fail because its use of the phrases is not a trademark use and constitutes fair use. (Mot.) Summit Hill also argues that Count III fails because Mr. Evans has not alleged that his trademarks are famous.[2] (*Id.*) Summit Hill's arguments are well-taken.

---

[2] Summit Hill further argues that Count IV fails because Mr. Evans does not allege that he registered his trademarks with the Ohio Secretary of State. (Mot.) The Court need not address this issue because "trademark claims under Ohio law follow the same analysis as those under the Lanham Act[.]" *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir. 2003) (citations omitted).

4

### A. Mr. Evans fails to allege facts sufficient to establish that Summit Hill's use is in a trademark way.

Summit Hill first argues that it does not use the disputed phrases in a trademark way, so trademark law does not allow Mr. Evans to challenge the use. The Court agrees. The Lanham Act defines a "trademark" as "any word, name, symbol, or device . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. "To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing 15 U.S.C. § 1114(1)). The third element—the likelihood of consumer confusion—is the "touchstone of liability for trademark infringement[.]" *Id.* at 610 (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)) (alteration omitted). Courts within the Sixth Circuit apply an eight-factor test to determine whether a likelihood of confusion exists. *Id.* "But the likelihood of confusion analysis also involves a preliminary question: whether the defendants 'are using the challenged mark in a way that identifies the source of their goods.'" *Id.* (quoting *Interactive Prods. Corp v. a2z Mobile Office Sols., Inc.*, 326 F.3d 687, 695 (6th Cir. 2003)). Put another way, is the mark being used <u>as a trademark</u>? If the answer to that preliminary question is "no," then "trademark infringement laws . . . do not even apply." *Id.*

Summit Hill argues that the phrases "Smoked Chipotle" and "Smoky Chipotle" are not used in a trademark way because they do not identify the source of their goods; that job is done by the Louisiana and Better Than Bouillon branding. The attachments to the Complaint show the products at issue. The Summit Hill product labels prominently display the respective brand names, while "Smoked Chipotle" and "Smoky Chipotle" appear in smaller font at the bottom of the label.




(Compl., Exs. G, H.)

The Chuck Evans' Montezuma-brand Smokey Chipotle product labels have little in common with Summit Hill's:



(Compl., Ex. E.) The color schemes, typography, graphics, and label shapes all indicate that these products emanate from a source *other* than Louisiana's or Better Than Bouillon's. *See Kassa v. Detroit Metro Convention & Visitors Bureau*, 672 F. App'x 575 (6th Cir. 2017) (viewing allegedly infringing banners and signs "in their entirety" to affirm the district court's finding of non-trademark use on a motion to dismiss).

Mr. Evans's Complaint does not allege any other facts establishing a likelihood of confusion as to the source of these products. The trademark infringement claim in Count I therefore fails, along with the derivate claims in Counts II–IV.

7

B. **Summit Hill is also entitled to the fair use defense.**

Mr. Evans's claims also fail because the challenged use is within the statutory affirmative defense of "fair use." Fair use applies when "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." 15 U.S.C. § 1115(b)(4). To avail itself of the defense, a defendant must "(i) use the label in a descriptive or geographic sense and (ii) do so fairly and in good faith." *Sazerac Brands, LLC v. Peristyle, LLC*, 892 F.3d 853, 857 (6th Cir. 2018) (citing *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir. 2003)). Because the trademark-use test and fair-use defense closely resemble one another, a claim that fails the former "will also be vulnerable to" the latter. *Id.*, 892 F.3d at 859. That is the case here. As is evident from the attachments to the Complaint, Summit Hill uses "Smoked Chipotle" and "Smoky Chipotle" to describe the ingredients and flavor profile of the product bearing that label. The Complaint alleges no facts giving rise to an inference of bad faith.

For his part, Mr. Evans disagrees that the phrase SMOKEY CHIPOTLE is descriptive; instead, he asserts that it is suggestive. (ECF No. 16.) He cites several reasons, including that "chipotle" literally translates to "smoked chile," rendering the adjective redundant, and that smoky is intentionally misspelled to provide a "mnemonic hint" to the pronunciation. (*Id.*; *see also* Compl., ¶ 21.)) Neither saves his claim. First, an adjective does not lose its descriptive quality just because it is grammatically unnecessary. Second, "[a] slight misspelling . . . will not usually turn

8

a descriptive word into a non-descriptive one." J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 11:31 (5th ed. 2024). Trademark law is not "meant to deprive commercial speakers of the ordinary utility of descriptive words." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004). To the extent consumers ever confuse Summit Hill's products for his own, that is a risk Mr. Evans accepted when he trademarked a phrase consisting of a noun (chipotle) and an adjective describing that noun's defining characteristic (smoky). *Id.*; *see also Hensley Mfg.*, 579 F.3d at 612.

      **C.**      **Mr. Evans fails to allege that his marks are famous, as required to state a trademark dilution claim.**

Finally, Summit Hill argues that Mr. Evans fails to allege facts necessary to state a trademark dilution claim. To state a claim for trademark dilution, a plaintiff must plead facts showing that his mark is "famous" and "distinctive," that the defendant used the mark "in commerce" after it became famous, and that such use caused the mark's distinctive quality to become diluted. *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 628 (6th Cir. 2003). A mark is "famous" for this purpose if it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). The Complaint does not allege that the SMOKEY CHIPOTLE marks are famous. Mr. Evans does not respond to Summit Hill's argument on this point. (*See* ECF No. 16.)

9

IV.  CONCLUSION

For the reasons above, Summit Hill's Motion to Dismiss (ECF No. 7) is **GRANTED**. Mr. Evans's Complaint is **DISMISSED**. All other pending motions are **DENIED as moot**. The Clerk is **DIRECTED** to **TERMINATE** this case.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**CHIEF UNITED STATES DISTRICT JUDGE**